## NELSON PERIN

### V.

## AUGUSTUS A. PARKER.

*Board of Trade—Employment of Commission Merchant—Agency— Demands for Margins—Waiver—Notice—Common Counts—Instructions— Practice—Omission in Verdict.*

1. A waiver is the intentional relinquishment of a known right, and there must be both knowledge of the existence of the right and an intention to relinquish it.

2. The employment of a commission merchant to buy or sell grain upon the Chicago Board of Trade, operates as a request to make all payments required by the rules of the board in the course of the execution of the employment, with a promise of repayment.

3. Money so paid by a commission merchant becomes a debt recoverable with interest under the common money counts.

4. In the case presented, it is *held:* That the successive demands made by the plaintiff were not so inconsistent as to require the jury to find, or this court to adjudge, that the last was a waiver of all the previous demands; that, having declined to furnish margins until differences were settled or determined, the defendant can not object that the notices were not sufficiently definite; that the plaintiff is not guilty of a failure to use due diligence to prevent an increase of the loss, the notice of refusal to pay margins by the defendant not being absolute and unconditional; and that there was no material error in the instructions nor in the action of the court in sending the jury back to supply an omission in the verdict.

[Opinion filed March 28, 1888.]

IN ERROR to the Circuit Court of Cook County; the Hon. RICHARD W. CLIFFORD, Judge, presiding.

Messrs. DEXTER, HERRICK & ALLEN and HORACE H. MAR-
TIN, for plaintiff in error.

Mr. H. S. MONROE, for defendant in error.

McALLISTER, J.  This was an action upon the common
counts in assumpsit, brought by Parker, a commission mer-
chant of Chicago, doing business on the board of trade, against
Perin, a resident of Cincinnati, Ohio, to recover for money
advanced by the former to the latter and commissions earned
in the course of execution by Parker, of the employment by
him as such merchant by Perin, December 30, 1882, to sell
for the latter upon the Chicago Board of Trade, 50,000 bushels
of corn, of which 25,000 bushels were to be delivered in Jan-
uary, and the same quantity in May, then next.  Upon trial
by jury the plaintiff below had a verdict and judgment for
$6,114.28, and the defendant brings error to this court, assign-
ing various errors, under which the most vital questions arise
upon the points made by counsel for plaintiff in error:  (1)
That as respects the alleged advances of money, the plaintiff
below failed to make out a cause of action by his evidence.
(2)  That what plaintiff below claimed as advances of money
for the defendant at his implied request were not such in legal
contemplation, and if any recovery could be had for what
plaintiff below was compelled to pay out in taking care of said
contracts of sale for defendant, such recovery could be only
upon a special, and not upon the common counts.  (3)  That
interest on the money so paid was not allowable.  Other points
for reversal were made which will be noticed as we proceed.

The first question then, is as to whether the plaintiff below
established by his evidence a cause of action as respects the
money so expended.  It clearly appears from the evidence
that at the time Perin employed Parker to sell for him on
the Chicago Board of Trade the corn in question, the former
was well acquainted with the usages, customs and methods of
doing business on that board; that no margins were asked for
by Parker or furnished by Perin.  And it is not pretended
that anything was said or done which could be construed into

a waiver of Parker's right to have Perin furnish margins, if the exigencies of the business made it expedient to do so. It appears that Parker made sale of the corn for future delivery immediately upon receiving the order of Perin, and in strict compliance therewith, and informed the latter that he had done so; that Parker did not have any of the corn at the time, and that from the usages of the business, with which Perin was familiar, it was to be presumed to have been within the contemplation of the parties that Parker should go upon the board of trade and buy on Perin's account the corn requisite to a delivery when the contracts of sale were closed up. It appears that from the time such sales were made the price of corn continually advanced in the market, so that by January 13, 1883, the deal was against Perin in the sum of $3,000 and upward. Parker then demanded of Perin that he supply margins in the sum of $3,500. The latter refused, saying that he would pay losses when differences were settled or determined, and not before. He put such refusal solely upon the ground that Parker had been ordered, January 4, 1883, to buy in the corn for January delivery and had violated his duty in that respect. That claim was shown to have been entirely without foundation. January 15th, Parker made another demand on Perin for $4,000 margins, by draft, which the latter refused to accept. Then Parker went to Cincinnati, and January 16th, had two personal interviews with him, and there asked him again for margins, and Perin peremptorily refused, assigning for the reason the said baseless claim that Parker had violated his duty in failing to buy in the corn for January delivery. Then, January 18th, Parker, by telegram from Chicago, demanded $6,000 to be sent by telegram by 12:30 o'clock of that day, and gave him notice that if this demand was not complied with he should buy in the corn for Perin's account. That telegram was not received by Perin until 12:15, and then it was impracticable for him to comply. He did not, and he does not pretend that he would if it had been received in time. On the contrary, the evidence tends to show that he, at no time afterward, intended to retract the notice he gave Parker January 13th, that he should pay no losses until differ-

ences were settled or determined.   When this case was before us, upon a former writ of error, Perin v. Parker, 17 Ill. App. 169, we held that upon the undisputed facts the notice and demand of January 18th were not reasonable; that such being the case, it should have been submitted to a jury to determine whether or not Parker, by his acts and words, had waived his rights upon his previous demands for margins, and whether or not Perin had before said last demand retracted his notice to Parker that he would not supply any.   The judgment in Parker's favor was reversed and the cause went back for a second trial.   Upon this last trial those last questions were specifically submitted to the jury: as to the waiver, by requests to find specially; as to the retraction, by instruction asked on behalf of defendant.   The jury found by their special verdict that there was no waiver and by their general verdict that there was no retraction of said notice of refusal to put up margins.

It is contended by counsel for Perin, that the special finding of the jury, that there was no waiver by Parker of any of the demands for margins made by him prior to that of January 18th, is unsupported by the evidence; that they were respectively insufficient if not waived.   A waiver is the intentional relinquishment of a known right, and there must be both knowledge of the existence of the right and an intention to relinquish it.   Hoxie v. Ins. Co., 32 Conn. 40; Lewis v. Ins. Co., 44 Conn. 72; West v. Platt, 127 Mass. 372.

A subsequent demand is not necessarily a waiver of a prior one.   Hill v. Hobart, 16 Maine, 164.   The fact that each successive demand made by Parker was for an amount larger than that of the next preceding one can not be considered as of controlling effect, because such increase of amount was properly due to the fact that the market price of corn was advancing from day to day.   In view of that circumstance the successive demands were not so inconsistent as to require the jury to find, or this court to adjudge, that the last was the waiver of all the previous demands.

But counsel for Perin now insists that the several notices or demands were not sufficiently definite, and that some of them

Perin v. Parker.

were for a larger amount than he was entitled to ask for. Even if that were so, having decided that he would furnish no margins until differences were settled or determined, and so notified Parker, he was precluded from taking advantage of such objections at the trial. It is also urged by counsel that it was the duty of Parker to have bought in the corn within a reasonable time after receiving the notice of refusal by Perin, January 13th, and thus prevented the subsequent increase of loss. We are inclined to the opinion that, if the notice had been absolute and unconditional, it would, upon settled principles of the law of principal and agent, have been the duty of Parker to use due diligence to prevent such increase of loss to himself and to his principal. But the notice, as given, can not be so regarded.

The next question is, whether the money paid by Parker in buying in the corn in question can be regarded as money advanced upon the implied request of Perin, and so become a debt recoverable under the common money counts. The rule applicable to such a case as this, is the rule which pervades the whole law of principal and agent, viz., that the principal is bound to indemnify the agent against the consequences of all acts done by him in pursuance of the authority conferred upon him. Taylor v. Stray, 2 C. B. N. S. 195; Leake on Contracts, 55. It is said by that excellent author on the same page: "Where a person has paid money under an indemnity from another person, it is, in general, equivalent to a payment made at his request; the indemnity operating as a request." Brittain v. Lloyd, 14 Mees. & W. 762; Lewis v. Campbell, 8 C. B. 541; Monle v. Garrett, L. R., 5 Ex. 132; L. R., 7 Ex. 101; 39 L. J. Ex. 69.

Leake, p. 56, further says: "The employment of a broker to buy or sell shares operates as a request to make all payments required by the rules of the Stock Exchange or other share market in the course of the execution of the employment with a promise of repayment." In that statement, the author is supported by the following cases: Bayley v. Wilkins, 7 C. B. 886; Westropp v. Solomon, 8 C. B. 345; Taylor v. Stray, *supra;* Smith v. Linde, 5 C. B. 587.

It surely needs no argument to prove that the same rules above adverted to are applicable to a case where a person employs a commission merchant to deal for him, either in buying or selling grain or other products, upon the Chicago Board of Trade.

The case shows that the plaintiff below acted, in buying in the corn under the circumstances shown, entirely in conformity with the rules and usages of said board of trade, with which the defendant was familiar when he employed him. What the plaintiff was compelled to pay out in doing so was, therefore, in consequence of the employment, in contemplation of the parties, and must be considered as in pursuance of the authority conferred by such employment, for which payment the defendant had impliedly promised to indemnify the plaintiff. The sums so paid out by the plaintiff, therefore, became a debt, recoverable against the defendant upon the common money counts, as money advanced by the plaintiff to the use of the defendant at his request. And that being so, the plaintiff was entitled to interest upon it, under Sec. 2 of the statute concerning interest.

Counsel for defendant below complain of error in the instructions to the jury. We do not deem it our duty to enter upon a discussion of the points specified by counsel, for in this case the plaintiff clearly established his right to recover the full amount which he did recover, not only by competent evidence, but evidence which was wholly uncontradicted. The defendant made no pretense of any defense but that of standing upon the general issue and requiring the plaintiff to prove his case. That was done by undisputed testimony, showing a right of recovery under settled rules of law. In such a case we think error in the instructions becomes entirely immaterial. We have considered the exception taken to the action of the court in sending the jury back to supplement what they had omitted in the verdict as first returned. Under the circumstances, as shown by the bill of exceptions, we think there was no error in such action of the court. The judgment should be affirmed.

*Judgment affirmed.*